458 P.2d 390

**Norman R. WAGNER, Appellant,**

v.

**The CORONET HOTEL and Rubbermaid, Inc., Appellees.**

**No. I CA–CIV 437.**

Court of Appeals of Arizona.

Division 1.

Sept. 8, 1969.

Rehearing Denied Oct. 14, 1969.

Review Denied Nov. 12, 1969.

Langerman, Begam & Lewis, Harrison, Strick & Myers, by Mark I. Harrison, Phoenix, for appellant.

McKesson, Renaud, Cook, Miller & Cordova, by Robert H. Renaud, Phoenix, for appellee Coronet Hotel.

Snell & Wilmer, by Arthur P. Greenfield, Phoenix, for appellee Rubbermaid, Inc.

HATHAWAY, Judge.

Norman R. Wagner brought suit to recover for personal injuries allegedly suffered while a guest at the Coronet Hotel in Phoenix, Arizona, on March 14, 1961. While taking a shower he allegedly slipped as he was standing on a rubber shower mat manufactured by Rubbermaid, Inc., and made available in his room by the Coronet Hotel. The jury returned a verdict for the plaintiff and against defendant Hotel and Rubbermaid in the amount of $40,000, on which judgment was entered. The court subsequently granted defendants' motion for judgment notwithstanding the verdict or in the alternative a new trial on the basis (1) that the evidence was insufficient to support the verdict and (2) the plaintiff's expert's testimony was improperly admitted.

The amended complaint upon which the lawsuit was tried sets forth four counts. The first count is in negligence; the second in breach of implied warranty of fitness; the third in breach of warranty of merchantability; and count four is in breach of express warranty. The case went to the jury only on the doctrine of

strict liability in tort. Keeping in mind the various distinctions between each of the defendants, we will discuss our findings as to them separately.

## DEFENDANT RUBBERMAID

We consider the judgment non obstante veredicto first, viewing the evidence and all reasonable inferences which flow from it most favorably to the plaintiff, the party against whom the judgment non obstante veredicto and alternative order for new trial was entered. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963); Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352 (1954); 2B Barron & Holtzoff, Federal Practice and Procedure § 1075, pp. 381–83 (Wright ed. 1960). Since a judgment non obstante veredicto deprives the party against whom it is entered of the jury's determination of the facts, it should be granted with caution. General Corporation v. General Motors Corporation, 184 F.Supp. 231 (D.Minn.1960); 2B Barron & Holtzoff, supra, p. 375.

Wagner testified that he had put the shower mat down in the middle of the tub and checked to make sure it was "lying flat on the bottom of the tub." There is no evidence that he was misusing it. While showering, he reached across his body with his right hand to soap and scrub his left shoulder, shifting his weight slightly, and the shower mat slipped out from under him.

In conducting a physical examination of the mat, the plaintiff's expert observed that " * * * the whole center area does not contain any cups." This no cup area was approximately 9½ inches in diameter, representing approximately 19.6 per cent of the total area of the mat. The "cups" referred to were the little cups appearing on the bottom of the mat to promote adhesion to the bathtub surface. According to this witness, the coefficient of friction of the mat with these cups pressed down to a wet tub was substantially greater than that of bare feet on a wet tub, but in those areas in which there were no suction cups, the co-efficient of friction of the mat was little better than bare feet. He further testified that in the shifting of weight on the mat, cups directly underfoot are of little help in resisting slippage, and cups forward of the direction of the movement of the foot on the mat were of no help, as the mat buckled, disengaging the suction cups. In response to a hypothetical question, he opined that the plaintiff's fall was caused by " * * * inability of this mat to give a consistent measure of resistance to slipping throughout its entire area."

Plaintiff's expert could see no reason why cups were omitted in the center section of the mat, and the only explanation offered by the manufacturer was that this was for the purpose of printing the following in the area of the mat: This mat is placed here for your convenience and protection to make your stay with us more enjoyable." There were no instructions or warning of any kind placed on or with the mat. Testimony from Rubbermaid employees indicated that approximately 191,000 of these mats had been placed on the market. Before doing so, various employees of Rubbermaid had tried the mats out in their home, but there had been no formal testing of coefficients of friction or the relative safety of these mats as compared to other possible designs.

Bathrooms are notoriously dangerous places. We are in an age of advanced technology. An object such as this, avowedly furnished for the "protection" of the user invites reliance. In the particular position where the plaintiff placed his weight on this mat, it furnished, according to the plaintiff's evidence, very little protection from slippage.

The jury could reasonably conclude from the evidence that the plaintiff was using the mat as intended; that defectiveness in the product exposed the plaintiff to unreasonable danger and caused his injuries. This conclusion is justifiable in spite of the defendants "state of the art" argument. Implicit in the concept of strict liability is the idea that if the manufacturer produces

a defective product which causes injury, he can be held legally liable despite his best efforts to make or design a safe product. E. g., Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962); Restatement, Second, Torts § 402(A); Prosser, Law of Torts § 97, pp. 672–685 (3d ed. 1964). The judgment non obstante veredicto is therefore reversed as to defendant Rubbermaid.

In his order conditionally granting the defendants a new trial in compliance with Rule 50(c), Arizona Rules of Civil Procedure, 16 A.R.S., the trial judge specified that the plaintiff's expert had erroneously been permitted to testify concerning experiments previously conducted by him under circumstances that were not substantially similar to those existing at the time of the incident and the defendants were thereby deprived of a fair and impartial trial. The experiments referred to were performed to determine the "frictional qualities" of the mat. These experiments were accomplished by means of a device which the expert had constructed for measuring the coefficient of friction of the mat. The device consisted of a bar with an assimilated rubber foot on one end and a "hinged weight which hangs down" on the other. The gripping qualities of the mat were tested by applying weight vertically to the bar at different angles of tilt to determine the amount of force necessary to cause it to slip. He performed the tests in his bathtub at home and in the bathtub where the fall allegedly occurred. The tests were performed under dry, wet and soapy conditions.

■ Ordinarily, the rejection of testimony based on experiments will be more critically examined than its reception. American Products Co. v. Villwock, 7 Wash.2d 246, 109 P.2d 570, 132 A.L.R. 1010 (1941). Prior to the reception of evidence based on out-of-court experiments, it must ordinarily be shown that the experiments were conducted under substantially similar conditions to those prevailing during the occurrence in controversy. Goodman v. Carson, 84 Ariz. 177, 325 P.2d 819 (1958). The conditions need not be identical and minor variations in conditions go to the weight rather than the admissibility, 29 Am.Jur.2d Evidence § 824, p. 913. The conditions need not be rigidly duplicated when experimenting to explore controverted traits or qualities of materials. McCormick, Evidence § 169, p. 361 (Hornbook Series 1954).

■ Common sense would preclude the duplication of identical conditions in the case at bench, first, because of the obvious inherent danger of duplicating the fall; and secondly, the securing of hopefully enlightening information would be limited. The frictional qualities of the mat are really the only justification for its manufacture and distribution. Absence of those qualities in the mat is the basis for the plaintiff's case. Testimony revealing the results of the rather extensive tests of those qualities should have served to enlighten the jury and to aid them in discovering the presence or absence of defects allegedly related to the occurrence. The jury was rightfully permitted the expert's aid and any assistance which they might have gained from the experiment results. Variation here between the conditions of the experiments and the occurrence go to the weight and not the admissibility of the evidence. Millers' National Insurance Company, Chicago, Illinois v. Wichita Flour Mills Company, 257 F.2d 93, 76 A.L.R.2d 385 (10th Cir. 1958); Chickasha Cotton Oil Co. v. Handcock, Okl., 306 P.2d 330 (1957); Sanders v. Glenshaw Glass Co., 204 F.2d 436 (3d Cir. 1953); C. F. Church Division of American Radiator and Standard Sanitary Corp. v. Golden, Okl., 429 P.2d 771 (1967); Jones v. Bradley, 113 Ga.App. 338, 147 S.E.2d 853 (1966); Hardman v. Helene Curtis Industries, Inc., 48 Ill.App.2d 42, 198 N.E.2d 681, 12 A.L.R.3d 1033 (1964).

■ Appellees' cross-appeal raising the trial court's failure to specify other grounds

set forth in their motion for new trial as a basis therefor was not perfected and was dismissed for failure to post a cost bond. Appellees urge that should we decide that the reasons given by the court for granting the new trial are insufficient we should nevertheless affirm because of other sufficient grounds set forth in their motion for new trial and appearing in the record. They contend that these grounds are properly before us because they support the trial court's order. The appellant responds that this is not so because the trial court rejected those grounds by not giving them as reasons for granting the new trial and to permit appellees to argue the rejected grounds necessarily attacks the superior court's order.

In Aegerter v. Duncan, 7 Ariz.App. 239, 437 P.2d 991 (1968) we followed the route advocated by appellees. Division One had earlier come to the opposite conclusion in Boudreaux v. Edwards, 7 Ariz.App. 178, 437 P.2d 430 (1968). Both cases cited Rogers v. Mountain States Telephone & Telegraph Company, 100 Ariz. 154, 412 P.2d 272 (1966). In *Rogers* the Arizona Supreme Court held that a cross-assignment of error could be made where the purpose was to uphold the order, citing Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183 (1955). There, the Supreme Court quoted from United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924):

"* * * the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."

■ Adhering to our position in *Aegerter*, we have considered the additional grounds submitted by appellees in support of a new trial order and find no abuse of the trial court's discretion in rejecting them. One of the plaintiff's trial attorneys

was charged by defense counsel with displaying an improved bath mat allegedly manufactured through a technique developed after the Wagner incident. Counsel disagreed concerning the extent and manner in which the mat was displayed during final argument. Defense counsel promptly objected and a recess was taken to argue a defense motion for mistrial which was denied. We defer to the trial court's superior position, afforded by his presence and opportunity to observe the courtroom activity, to judge the prejudicial effect of counsel's actions. Likewise, we are unable to attribute prejudicial effect to plaintiff's counsel's statement during final argument: "There is no sense of fault as we human beings ordinarily think of it." Defense counsel objected on the basis that the quoted statement was a misstatement of the law and told the jury in substance that liability could be found "without a finding of fault." We find no fault with the statement and agree with the trial court's overruling the objection.

## DEFENDANT CORONET HOTEL

■ The trial court, in its pretrial order, allowed the case to go to the jury only under the doctrine of strict liability. It appears that neither party objected to the ruling at that time, nor has the issue been raised here on appeal by the litigants. Even so, we find that a fundamental error was committed in allowing the jury to find the defendant Coronet Hotel liable on the theory of products liability. An error going to the foundation of the action will be noticed and reviewed on appeal whether or not it was assigned. State Consolidated Publishing Company v. Hill, 39 Ariz. 163, 4 P.2d 668 (1931).

■ The theory of strict liability in tort applies only to those who are engaged in the business of *selling* products for use or consumption, such as a manufacturer, wholesaler, retailer, or distributor. Restatement, Second, Torts § 402(A), Comment F; Bailey v. Montgomery Ward and

Company, 6 Ariz.App. 213, 431. P.2d 108 (1967). Of all the various policy views expressed for the theory of strict liability,[1] none are applicable to the Coronet Hotel.

Instead it appears that the relationship between the plaintiff, a paying guest, and the Hotel was that of inviter and invitee. Thus the Hotel was not an insurer of the safety of the plaintiff, but was only under a duty to keep its premises in a reasonably safe condition. Sherman v. Arno, 94 Ariz. 284, 383 P.2d 741 (1963). Various other cases have dealt with the question of injuries arising from the failure to furnish bath mats, or alleged defects in bath mats furnished. The following cases have held that the Hotel was not negligent. LaBart v. Hotel Vendome Corp., 213 F.Supp. 958 (D.C.Mass.1963); Coyle v. Beryl's Motor Hotel, 85 Ohio Law Abst. 492, 171 N.E.2d 355 (1961); and Sinopoci v. Courshon, Fla. App., 116 So.2d 659 (1959). We do not consider the Hotel's negligence here.

The trial court was correct in directing a judgment n. o. v. in favor of the Coronet Hotel, but for improper reasons. For the reasons stated in this opinion, we affirm that judgment. The judgment non obstante veredicto and the conditional order granting defendant Rubbermaid a new trial is reversed, and it is ordered that the jury's verdict against Rubbermaid be reinstated, that judgment be entered thereon and that the plaintiff be awarded costs.

MOLLOY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

1. Restatement, Second, Torts § 402(A), Comment C:
   "On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."