Beverly ROWE, Administratrix, Plaintiff,

v.

JOHN C. MOTTER PRINTING PRESS COMPANY, Defendant and Third-Party Plaintiff,

v.

LOCKWOOD GREENE ENGINEERS, INC., Providence Gravure, Inc., James J. O'Rourke d/b/a O'Rourke Company, the Anderson Sheet Metal Company and E. Turgeon Construction Co., Inc., Third-Party Defendants.

Beverly ROWE, in her capacity as Administratrix of the Estate of Warren S. Rowe, Plaintiff,

v.

LOCKWOOD GREENE ENGINEERS, INC., Defendant and Third-Party Plaintiff,

v.

JOHN C. MOTTER PRINTING PRESS COMPANY, James J. O'Rourke d/b/a James J. O'Rourke Electric Co., the Anderson Sheet Metal Company, Providence Gravure, Inc. and E. Turgeon Construction Co., Inc., Third-Party Defendants.

Civ. A. Nos. 3323, 3502.

United States District Court
D. Rhode Island.

Oct. 6, 1969.

See also D.C., 273 F.Supp. 363.

Guy J. Wells, Hinckley, Allen, Salisbury & Parsons, Providence, R. I., for plaintiffs.

Owen P. Reid, and Edward J. Regan, Providence, R. I., for Lockwood Greene Engineers, Inc., defendant and third-party plaintiff.

Joseph V. Cavanagh, Higgins, Cavanagh & Cooney, Providence, R. I., for John C. Motter Printing Press Co., third-party defendant; Frederick A. Reardon, Providence, R. I., of counsel.

Joseph A. Kelly, Carroll, Kelly & Murphy, Providence, R. I., for James J. O'Rourke d/b/a James J. O'Rourke Electric Co., third-party defendant.

John G. Carroll, Providence, R. I., for The Anderson Sheet Metal Co., third-party defendant.

Edward F. Hindle, of Edwards & Angell, Eldridge H. Henning, Jr., of Worrell & Hodge, Providence, R. I., for Providence Gravure, Inc., third-party defendants.

William A. Curran, of Jordan, Hanson & Curran, Providence, R. I., for E. Turgeon Construction Co., Inc., third-party defendant.

## OPINION

DAY, Chief Judge.

In these two actions brought under the provisions of the Rhode Island Death By Wrongful Act statute the plaintiff, as administratrix of the estate of Warren S. Rowe, seeks to recover damages for the death of her intestate which she claims was caused by the negligence of the respective defendants named therein. In each case the defendant has impleaded third-party defendants under the provisions of Rule 14(a), Federal Rules of Civil Procedure.

By agreement of the parties, the actions were consolidated for trial to the Court. They arise out of a fire at the plant of Providence Gravure, Inc. in Providence, Rhode Island, on May 27, 1963, which resulted in the death of the plaintiff's intestate, one Warren S. Rowe, who was at that time employed in said plant.

In Civil Action No. 3323 plaintiff alleges that prior to May 27, 1963, the defendant sold to Providence Gravure, Inc. and installed in its said plant certain presses, that it knew or should have known that said presses when operated generated static electricity which, if not led off or otherwise disposed of, creates a hazard to persons working on or near said presses. She further alleges that at that time defendant knew or should have known that said presses are in normal course of use cleaned with highly volatile substances and that this in combination with free static electricity presents an unusual hazard to persons working on or near said presses, and that on May 27, 1963, the said Warren S. Rowe, an employee of said Providence Gravure, Inc., was cleaning one of said presses with a volatile substance when static electricity generated by said press ignited it causing a fire in his clothing that resulted in his death. She avers that the defendant was negligent in (a) failing to ground the press adequately so that static electricity would be led off harmlessly, (b) failing to post a warning on the press that special hazards existed and (c) failing to manufacture said press in such a way as to render the free discharge of static electricity impossible, and that as a result of the defendant's negligence the said Warren S. Rowe was severely burned and eventually died.

In Civil Action No. 3502 plaintiff alleges that prior to May 27, 1963, John C. Motter Printing Press Company sold certain printing presses manufactured by it to Providence Gravure, Inc., and as a part of its contract, agreed to install said presses in its plant and in conjunction with the Defendant, Lockwood Greene Engineers, Inc., undertook and did in fact complete the work of installation; that the defendant performed engineering work in connection with the sale and installation of said presses and, in performing said work, knew or ought to have known that said presses when operated generated static electricity which if not led off or otherwise disposed of creates a hazard to persons working on or near said presses. She further alleges that the defendant knew or should have known that said presses in the normal course of use are cleaned with highly volatile substances and that such substances in combination with free static electricity present an imminently dangerous hazard to all who might come near or work on said presses; that on May 27, 1963, the said Warren S. Rowe, an employee of Providence Gravure, Inc., was cleaning one of said presses with a volatile substance when static electricity generated by said press ignited causing a fire in his clothing that resulted in his death. She alleges that the defendant was negligent in (a) failing to ground said press adequately so that said static electricity would be led off harmlessly, (b) failing to post a warning on the press that special hazards existed and (c) failing in its engineering work in connection with the sale and installation of said press to see that the free discharge of static electricity was impossible and that as a result of the defendant's negligence the said Warren S. Rowe was severely burned and eventually died.

At the conclusion of the trial, I dismissed the third-party complaints against all of the then remaining third-party defendants except the third-party defendants, Lockwood Greene Engineers, Inc., John C. Motter Printing Press Company and James J. O'Rourke. I reserved decisions as to the defendants and said remaining third-party defendant, James J. O'Rourke, pending the filing of memoranda by counsel, which have been carefully considered by me.

The evidence establishes that on May 27, 1963, the said Warren S. Rowe was a

**1004**

twenty-nine year old apprentice pressman working in the role of journeyman pressman in the plant of Providence Gravure, Inc., in Providence, Rhode Island. He had begun his apprenticeship program in 1960 and had worked for various employers prior to 1962 when he entered the employ of the Providence Journal Co. When Providence Gravure, Inc. opened its rotogravure plant in December 1962, he was transferred to its payroll.

In the early afternoon of May 27, 1963, he was standing between two units of a large 8-unit gravure press and was in the process of cleaning one of said presses. Said press was running and a web of paper was moving through it at a slow speed. In the process of cleaning said press, the decedent was using an open plastic bucket of a highly flammable solvent—either Lactol, with a flash point of 20° Fahrenheit, or Toluol, with a flash point of 40° Fahrenheit, and was pouring said solvent from a paper cup on to a revolving steel roller of said press. There was uncontradicted evidence to the effect that on May 17, 1963, a large quantity of Solvent D, a cleaning agent with a flash point of 115° Fahrenheit had been delivered to the plant of Providence Gravure, Inc. There was no satisfactory evidence presented to account for the non-use of Solvent D instead of the highly flammable Lactol or Toluol.

Suddenly there was a burst of flame which enveloped the body of the decedent. At the time, the decedent was wearing shoes with rubber composition soles. Although there were steel plates separating the bases of the press units, the remainder of the pressroom floor was made of cement.

Dr. John H. Gibbs, a physio-chemist, testified as an expert for the plaintiff. In answer to a hypothetical question, he stated that it was his opinion that said explosion and fire were caused by a static spark generated within the press by the motion of the web of paper over the rubber roller, and that said static spark ignited the vapor produced by the sol-vent that was then being used by the decedent.

Said 8-unit press was a standard automated gravure press which was capable of printing various colors in succession on a web of paper approximately 7½ feet wide as it passes from one unit to the succeeding unit. Between units a built-in venting system dried the printing ink and recaptured the solvent vapor from the ink. The web moved at a speed up to 1500 feet per minute. The evidence establishes that said press was substantially the same design as had been used in all modern gravure plants throughout the country. It differed only in the width of its web. Said press was designed for the use of inks containing flammable solvents. The ink fountain which wets the lower portion of the revolving printing cylinder was sealed and the drying hood above it was automatically vented through forced air and ducts. The motors, fans, lights, etc. were all spark-proof and explosion proof. Plaintiff did not offer any expert testimony as to any improper design or malfunctioning of said press in any of these features.

From the evidence it is clear that the decedent's employer, the decedent and his fellow employees in said pressroom had knowledge that the moving web would produce static electricity. Signs indicating that smoking was prohibited were posted prominently in said pressroom and employees were directed not to smoke therein. Prior to the installation of said presses, the production manager of Providence Gravure, Inc. advised John C. Motter, Jr., Vice-President and General Manager of the defendant, John C. Motter Printing Press Company, that he intended to install static eliminators on said presses after they were set up in the plant. After said presses were installed such eliminators were added thereto by the pressroom maintenance crew under the supervision of its foreman, Mr. Fred P. Heinsohn.

There was no evidence by the plaintiff that said static eliminators as installed were defective, inadequate or improperly

installed. On the contrary, Mr. Peter J. Hicks, who at that time was the Chief Electrical Inspector of the City of Providence, and who inspected them after their installation, testified that they were properly installed and more than sufficient. He also testified that the presses were adequately grounded and to a degree in excess of safety code requirements.

The evidence is undisputed that said fire and explosion did not occur while the paper which was moving through said press was being printed. They happened while the printing cylinder was being cleaned between printing jobs during the so-called "make ready" operation. From the evidence it is clear beyond any doubt that said press was so designed that by the operation of a switch located on the side thereof said press could be set in the "off impression" state, so-called, which would stop the moving web of paper. In the "off impression" state, the rubber roller which is covered by the paper and its steel back-up roller are raised so that the web is not pressed against the printing cylinder and the web hangs motionless. No static electricity can be or is generated while the web of paper remains motionless. The testimony establishes clearly that said press was not changed to the "off impression" state during said cleaning process. The web of paper was left moving at a reduced rate of speed so that by its passing over the printing cylinder it would absorb the ink thereon which had been loosened by the solvent that was being applied. Such paper was thereafter discarded as waste, it no longer being suitable for printing purposes.

The witnesses, Motter, Jr., Swagert and Sudeck, testified unequivocally that said press should have been cleaned only while it was in said "off impression" state and that they had never seen presses manufactured by John C. Motter Printing Press Company cleaned while the web of paper was moving, either at the plant of Providence Gravure, Inc. or elsewhere. Mr. Swagert also testified that on several occasions prior to May 27, 1963, he had observed said presses in the plant of Providence Gravure, Inc. in the process of being cleaned and that on each of those occasions the press being cleaned was in the "off impression" state. No attempt to refute this testimony was made by the plaintiff.

■ In each of these actions the plaintiff claims that the defendant was negligent in failing to ground said press so that static electricity would be let off harmlessly. Plaintiff did not present any evidence that said press was not adequately grounded. Credible evidence was presented by the defendants which satisfies me that it was. The evidence establishes that no complaints were ever made to either of said defendants prior to May 27, 1963 that said presses were not functioning properly. In my opinion the plaintiff has failed to establish by a fair preponderance of the evidence that either defendant was negligent in failing to ground said press adequately.

■ Plaintiff's contention that each defendant was guilty of negligence in failing to post a warning on said press that special hazards existed is, in my opinion, likewise without merit. As hereinbefore recited, the evidence establishes conclusively that the press was being improperly cleaned while said web of paper was moving through the press generating static electricity. From the evidence presented it is clear that Providence Gravure, Inc. and its pressmen knew that a moving web of paper generates static electricity. As hereinbefore recited, said press was so designed as to permit of its being cleaned without said web of paper being in motion.

There was credible testimony that on previous occasions the practice was to clean said presses when they were in the "off impression" state. To clean said press with a highly flammable solvent with the web moving was not a misuse of said press to be anticipated by the defendants or either of them. The special hazard created by such action must have been known to said employees of Provi-

dence Gravure, Inc. There was no reason for either of said defendants to anticipate that the decedent or his fellow employees would be permitted to clean said press while it was not in the "off impression" state and the web of paper was moving through it. There was no duty on the part of either of said defendants to warn Providence Gravure, Inc. of the potential hazard involved in said misuse of said press. Brown v. General Motors Corporation, 1966, 4 Cir., 355 F.2d 814; Marker v. Universal Oil Products Company, 1957, 10 Cir., 250 F.2d 603.

In Brown v. General Motors Corporation, supra, the Court held at page 820 of 355 F.2d:

"Finally and most importantly, both rules of warranty and negligence apply only when the machine is operated in the manner intended for it. See, e. g., Hardman v. Helene Curtis Industries, Inc., 48 Ill.App.2d 42, 198 N.E. 2d 681, [12 A.L.R.3d 1033] (1964); Strahlendorf v. Walgreen Co., 16 Wis. 2d 421, 114 N.W.2d 823 (1962). If not so employed, then the machine does not come within the implied warranty. Nor in such circumstances may liability be rested in tort, for the manufacturer cannot be held to foresee an unpredictable misuse."

Similarly, in Marker v. Universal Oil Products Company, supra, the Court said at page 606 of 250 F.2d:

"While a designer or manufacturer may have a duty to warn of a latent limitation in even a perfectly made article, Tomao v. A. P. DeSanno & Son, Inc., 3 Cir., 209 F.2d 544, no such duty extends to the potential danger involved in the totally unanticipated misuse of an item. Walton v. Sherwin-Williams Co., 8 Cir., 191 F.2d 277; Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853; Sawyer v. Pine Oil Sales Co. et al., 5 Cir., 155 F.2d 855. * * *"

▬ In my opinion the plaintiff has likewise failed to establish by a fair preponderance of the evidence that the defendant John C. Motter Printing Press Company was negligent in failing to manufacture said press in such a way as to render the free discharge of static electricity impossible or that the defendant Lockwood Greene Engineers, Inc. was guilty of negligence in its engineering work in connection with the sale and installation of said press to see that the free discharge of static electricity was impossible. No expert testimony was presented by the plaintiff in support of these contentions. The testimony that was presented establishes that said press was properly grounded to prevent the discharge of such electricity and that the static eliminator which was installed thereon by Providence Gravure, Inc. after consultation with Lockwood Greene Engineers, Inc. was adequate for the purpose intended. Moreover, I find that in the proper operation of said press there was no "free discharge of static electricity" as claimed by the plaintiff. I am convinced that the failure of said employees of Providence Gravure, Inc. to place said press in the "off impression" state while the decedent was cleaning it with a highly flammable solvent was the sole cause of the tragic accident involved in these cases and that neither of said defendants was guilty of any negligence that was a proximate cause of it.

Accordingly, in C.A. 3323 judgments will be entered in favor of the defendant, John C. Motter Printing Press Company and in favor of the third-party defendants therein, Lockwood Greene Engineers, Inc. and James J. O'Rourke d/b/a O'Rourke Co. In C.A. 3502 judgments will be entered in favor of the defendant, Lockwood Greene Engineers, Inc., and in favor of the third-party defendants therein, John C. Motter Printing Press Company and James J. O'Rourke d/b/a James J. O'Rourke Electric Company.