Paul W. Werner, Appellee, v. Illinois Central Rail-
road Company, Appellants.

294

Opinion filed March 1, 1941. Rehearing denied April 15, 1941.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, and NORMAN J. GUNDLACH, both of East St. Louis, for appellant; E. C. CRAIG, V. W. FOSTER and CHARLES A. HELSELL, all of Chicago, of counsel.

MARK D. EAGLETON and ROBERTS P. ELAM, both of St. Louis, Mo., and JOSEPH B. McGLYNN, of East St. Louis, for appellees; McGLYNN & McGLYNN, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

This is an appeal by defendant Illinois Central Railroad Company from a verdict and judgment in favor of plaintiff, Paul W. Werner, in an action under the Federal Employers' Liability Act for damages for personal injuries sustained by plaintiff at Pana, Illinois, as the result of his being struck by a dwarf semaphore signal while riding on the side of a box car in the course of his employment with defendant. The parties concede that the provisions of the Federal Employers' Liability Act apply to this case.

The specific negligence charged in the complaint is that defendant maintained and used said dwarf signal in close and dangerous proximity to defendant's main line track so as to endanger employees riding on the sides of cars moving on the track and that defendant knew or, in the exercise of ordinary care, should have known of such dangerous condition in time to have remedied the same prior to plaintiff's injury, but negligently and carelessly failed so to do.

Defendant's answer denied all charges of negligence, alleged that plaintiff's injuries were caused by his sole negligence and that plaintiff, through his employment, assumed the risk of his injuries. Defendant also pleaded in the alternative, for the purpose of reducing damages, that plaintiff was guilty of contributory negligence.

Plaintiff was injured on August 21, 1936, at about 9:20 a. m. on a clear day. The injury occurred near defendant's station at Pana, at which point defendant's main line consists of a single straight track practically level, running in a general northerly and southerly direction. A short distance north of this station the tracks of another railroad cross defendant's main line, and south of this crossing there was located a control tower and various semaphore signals which were operated from the control tower and controlled the movements on defendant's main line. Approximately 80 feet south of this crossing, and just west of defendant's station, were the points of a switch in defendant's main line track, which switch led to the south and west into defendant's "siding" or "passing track," which passing track then ran southerly, parallel to and west of the main line track.

The dwarf signal involved in the accident was located 220 feet south of the switch points and between defendant's main line track and the side track. This dwarf signal stood on a concrete block which was 5 inches above the ground level and consisted of an iron box-like base, from the top of which there projected upward a rectangular vertical iron column 12 inches high, which supported a box-like iron head on top, to which was attached a movable semaphore device, the top of such iron head being 41 inches above the ground. That part of the signal semaphore arm which projected to the east beyond the head of the signal for a distance of some 3 to 6 inches, was made of soft rubber and is referred to as a "paddle." This dwarf signal had

nothing to do with regulating or controlling movements on the main line track, and had no connection with the work or movement in which plaintiff was engaged.

Plaintiff, at the time of the accident, was employed by defendant as a brakeman, and was part of a train crew engaged in moving 3 freight cars in a northerly direction on the main line track past the dwarf signal. The engine facing south was pushing 3 cars north of it, and plaintiff was riding on the west side of the south end of a box car which was the first, or lead car, in the movement. The conductor of the crew, one Baughman, was riding on the same car, also on the west side but at the north end of the car.

The end of the box car ridden by plaintiff contained a long ladder, which would enable a person to climb to the top of the car. This ladder consisted of a series of 7 horizontal grab irons spaced at regular intervals from the bottom sill of the car to near the roof. The bottom grab iron of the ladder projected 4⅜ inches from the body of the car. At the bottom of this ladder was a sill step or "stirrup," consisting of a U-shaped strap of metal hung from the bottom sill of the car, so that the bottom part of the step was about 27⁹⁄₁₆ inches above the ground.

The distance between the bottom of the stirrup and the lowest grab iron was 16¼ inches and the measurement from the bottom of plaintiff's foot to his knee was approximately 20½ inches, and when plaintiff was standing on this stirrup this last mentioned grab iron projected out from the side of the car opposite plaintiff's leg at a point about four inches below plaintiff's knee.

Plaintiff testified that at the time of the accident he was standing in an upright position on this stirrup, with his left hand on the third grab iron and his right hand on the fourth grab iron from the bottom of the ladder; that he was in the same position he had been in on numerous prior occasions; that he had assumed

this position when the movement of the cars started some several hundred feet south of the dwarf signal and had kept this position until the time he was struck. As the cars were moving north plaintiff said he was looking northerly and upwards toward the signal tower as a part of his regular duties, watching for a possible change in signals, and that he did not then see the dwarf signal. The speed of the train at this time was about 10 or 12 miles per hour. Plaintiff stated that as he passed the dwarf signal the signal struck the calf of his left leg and knocked him off the car to the ground and he was run over.

A flagman at a crossing a short distance south of the dwarf signal testified that he had observed the box car on which plaintiff was riding at the time it passed such crossing, and that plaintiff was then riding straight up against the car in an upright position, and that that was the same position brakemen would ordinarily ride in when passing that particular place. This witness did not see the plaintiff struck by the signal.

The conductor, Baughman, testified that at the time of the accident he was standing on the stirrup of the short ladder located at the north end of the car. This short ladder differed from the long ladder on which plaintiff was riding in that there were only 2 grab irons, the lower one being located from 16 inches to 18 inches above the sill of the car. Baughman stated that he turned his head around just as plaintiff was getting struck and at this time plaintiff was hanging on the long ladder of the car.

Plaintiff called Joseph A. Osborn, a consulting engineer who had practiced his profession with the American Car & Foundry Company for a number of years, who testified as to certain measurements he had made of defendant's dwarf signal device and of a car of the same type, class, series and dimensions as that upon which plaintiff was riding when injured. Osborn testified that the maximum clearance between the iron part

of the dwarf signal and the outer edge of the bottom grab iron of the long ladder of a box car identical to that on which the plaintiff was riding, at a point where the two would become adjacent to one another, and at the point where plaintiff was injured, would be 10 inches, whereas, the maximum clearance between the extreme east edge of the rubber portion of the signal arm and the outer edge of the lower grab iron measured in the same position would be only 4 inches. Defendant produced no testimony as to these measurements. The witness Osborn further testified over objection that there was no practical necessity for this signal to be either as high as it was or as close to the main line track and that defendant could have either lowered the signal or moved the signal along with a portion of its side track to a point further west of the main track along its right of way with little expense and without interfering with the function of the signal and the tracks. He also testified that the box car upon which plaintiff was riding was an unusually wide box car and was about a foot wider than the standard ''P'' box (car) and was wider than Illinois Central cars. The car in question was one of a series of 2339 Union Pacific steel box cars, each having the same equipment and dimensions.

The plaintiff at the time of his injury had had 33 years' practical experience as a railroad man, and had been employed by the defendant for a period of 24 years. During this latter time he had been in the Pana Yards numerous times and was familiar with all of the signals located there, including the dwarf signal in question. Plaintiff further stated that he had been familiar with the dwarf signal involved in the accident over a period of 24 years, and that it was in the same place during all of that time and was always in the same position with reference to the track, but that he had never measured the distance between the signal and the track. He also testified that he had ridden by

this dwarf signal other times previous to the day of his injury on the west side of box cars, in the position he was in at the time of his injury, and that on the day of the accident he had assisted in the switching of certain cars which were being taken past the signal from the north to the south end of the yards. There is no evidence that plaintiff at any time rode past this signal on a box car with the dimensions of the particular box car involved in the accident.

At the time of his injury plaintiff was 52 years of age and earning $225 per month. The accident caused extensive and serious injuries to plaintiff's left arm, left leg, head and spine. He was confined to hospitals for a period of 6 weeks and it was necessary to amputate his left arm between the shoulder and the elbow. He was totally disabled from doing any manual work or labor from the time of the accident to the date of the trial on October 2, 1939.

At the close of all the evidence defendant's motion for a directed verdict was denied. The jury returned a verdict in favor of the plaintiff in the amount of $35,000. Defendant moved for judgment notwithstanding the verdict which the trial court denied and after the entry of judgment defendant moved for a new trial which motion the court also denied. Defendant thereupon took this appeal.

Defendant's first contention is that this case should be reversed without remanding for the reason that defendant was not negligent and that if there was any negligence the plaintiff assumed the risk of such negligence. If there was any evidence in the case tending to establish plaintiff's complaint, the question of negligence on the part of the defendant was one of fact for the jury.

It was defendant's continuous duty to provide a reasonably safe place to work for its employees. However, in fixing the scope of such duty, courts have kept in mind that the work of a railroad is attended with

danger and can only be carried on by means that are hazardous and dangerous to employees who engage in such employment. (*Devine v. Delano,* 272 Ill. 166.) It is well settled that this duty is violated by the company where structures, obstructions or appliances are permitted to exist or are maintained at or near the railroad tracks so as to endanger employees passing on cars in the course of their duties where no practical necessity exists for permitting such dangerous conditions to remain and where it only requires the exercise of due care to make such dangerous conditions safe. (*Texas & P. R. Co. v. Swearingen,* 196 U. S. 51, 25 Sup. Ct. 164; *Choctaw O. & G. R. Co. v. McDade,* 191 U. S. 64, 24 Sup. Ct. 24.)

The evidence clearly indicates that the plaintiff was injured because of the close proximity of the dwarf signal to the track. In this class of cases, any contributory negligence on the part of the plaintiff was immaterial on the question of defendant's liability. A clearance of only 10 inches rendered the running of cars past the signal dangerous and unsafe to defendant's brakemen. No practical necessity existed for the maintenance of the dwarf signal in the position it was in at the time of the accident. It is undisputed that with very little cost the signal could have been moved or lowered without destroying its practicability and more important, if the location of the signal had been changed as suggested, the dangerous and unsafe condition would have been eliminated. The Union Pacific car on which plaintiff was riding at the time of the injury was one of many such cars then in use. It is reasonable to assume that the defendant in the operation of its railroad knew of the unusual size of this type of car. The jury could reasonably infer that the railroad knew or in the exercise of due care should have known that the close proximity between the dwarf signal and the box car of such unusual size created a dangerous condition to passing brakemen and that de-

fendant in the exercise of due care should have remedied the condition or warned plaintiff of such danger. In holding a railroad company liable under similar circumstances the court, in *Choctaw O. & G. R. Co. v. McDade, supra,* said: "The testimony makes it clear that in the proper construction of this appliance there is no necessity of bringing it so near to the car as to endanger brakemen working thereon. . . . Where no necessity exists, as in the present case, for the use of dangerous appliances, and where it is a matter requiring only due skill and care to make the appliances safe, there is no reason why an employee should be subjected to dangers wholly unnecessary to the proper operation of the business of the employer. . . . The spout might readily have been so constructed and hung as to be safe. As it was maintained, it was a constant menace to the lives and limbs of employees whose duties required them, by night and day, to pass the structure. It is a case where the dangerous structure is not justified by the necessity of the situation, and we agree with the judgments in the courts below that its maintenance under the circumstances was negligence upon the part of the railroad company." We are of the opinion that the question of defendant's negligence was properly submitted to the jury. See also, *Harvey v. Texas & P. Ry. Co.,* 166 Fed. 385; *West v. Chicago B. & Q. Ry. Co.,* 179 Fed. 801; *Devine v. Delano, supra.*

Many cases are cited by defendant but none apply to the facts in this case. These cases, for example, *Chesapeake & O. Ry. Co. v. Leitch,* 276 U. S. 429, are based on the ground that where railroads are compelled to adopt and maintain appliances and structures at or near their tracks because of practical necessity, it is unreasonable to throw the risk and danger incident to the use of such appliances and structures on the railroad.

The burden of proof of the assumption of risk by plaintiff was on the defendant, and whether an em-

ployee has assumed the risk is ordinarily a question of fact for the jury. (*Kanawha & M. R. Co. v. Kerse,* 239 U. S. 576; *Pipal v. Grand Trunk Western Ry. Co.,* 341 Ill. 320.) Both parties agree that in order to charge an employee with the assumption of a risk attributable to a defect due to his employer's negligence, it must appear not only that he knew or is presumed to have known of the defect, but that he knew it endangered his safety or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it. (*Gila V. G. & N. Ry. Co. v. Hall,* 232 U. S. 94.) The plaintiff in the instant case had never measured the distance between the dwarf signal and the main line track and had never acquired any definite knowledge of that distance. There is no proof tending to show that the plaintiff ever rode past this signal on a car of the size of the car in question or on any car other than an ordinary car, and no proof tending to show that he had seen any other person ride past such signal on the long ladder end of such a car. In *Davis v. Gray,* 8 F. (2d) 843, the court said: "On the present record, this was the first time that Gray had ever ridden by this platform on an engine of that type. He did not assume the risk unless the jury would have been warranted in finding that on this first trip, on such an engine, by that platform, he was bound to know that the . . . line (vertical and horizontal) of this platform, as the wider step of this engine passed by it, created a trap which might catch his heel and pull him from the engine under the train. This falls very far short of being substantial evidence for the jury that the danger encountered was open, obvious and apparent." The fact that the plaintiff had ridden past the signal on the sides of ordinary cars without being struck by the signal, fairly tends to prove that the signal was not ordinarily dangerous to those so engaged, and to raise the inference that the plaintiff had reasonable grounds to believe and did

believe that there was no danger to be anticipated at the time in question. The jury would have been justified in believing that plaintiff was injured not because he assumed any unusual position on the side of the car but because of the car being unusually wide and being so built as to prevent plaintiff's legs near his knees from being in close to the side of the car so that they necessarily projected outwardly from the stirrup. Plaintiff had the right to assume that the defendant would not send him into a place of danger which could be remedied by the exercise of ordinary care on defendant's part. The undisputed fact that the plaintiff at the time of and immediately before passing such signal was in the performance of his duty in looking upward to watch the semaphore signals controlling the movement of this train could reasonably be considered by the jury as preventing him in the exercise of reasonable care from knowing or appreciating the immediate risk and danger that he was subject to in passing the signal. English, the crossing flagman, testified that as the car in question passed him in the particular movement he saw the plaintiff and Baughman riding on the right side of the car in the usual and customary upright position occupied by brakemen in passing that particular place in doing that work, and that he had ridden past such signal in that manner and position without difficulty on numerous occasions, and there was nothing about the circumstances that made him think he could not get by such signal.

In our opinion the question of assumption of risk on the part of plaintiff was a question of fact for the jury, and there was no error in refusing to direct a verdict for defendant on such ground.

It is next contended by defendant that the trial court erred in admitting the testimony of the witness, Osborn, who testified as an expert on behalf of plaintiff. Over the objection of defendant, Osborn was allowed to give his opinion that it would be practicable from

a railroad engineering standpoint either to reduce the height of the dwarf signal by at least 15 inches, or to move the signal and the passing track further to the west and away from the main line track, and that either change could be made with little expense to the railroad. Before being allowed to express such opinion Osborn had testified to having taken measurements of the dwarf signal, of its relative location with reference to the tracks, of the distances between the rails of the tracks, and of a box car identical with the car in question, and testified as to other measurements. Under the *McDade* case, *supra,* and many other cases cited, the question of the practical necessity of the dwarf signal being in the dangerous position that it was in was a very material question. As the record stands, aside from the question of whether such answer was a mere conclusion of the witness, the record shows that from a practical standpoint there was no necessity for such signal being in a dangerous position. Defendant offered no evidence to the contrary. Therefore, in any event, there was no error in allowing the witness to express such opinion.

Defendant urges that the witness was not sufficiently qualified to testify on engineering problems of this nature. The record shows that after Osborn received his degree of electrical engineering, he was employed from 1900 to 1926 as chief engineer for the American Car & Foundry Company (manufacturers of railroad cars and equipment), and from 1926 to the date of the trial, as a private consulting engineer. Whether a witness is competent to give an expert opinion is a question of fact for the trial judge, and can only be reviewed where there has been a grave abuse of discretion. (*Bonato v. Peabody Coal Co.,* 248 Ill. 422, 426.) On this record we do not believe that the trial court abused its discretion in permitting Osborn to testify on these points.

Defendant complains that it did not receive a fair and impartial trial by reason of certain statements alleged to have been made by the trial judge to the entire jury panel before the trial of this case began. These statements do not appear any place in the record or report of the trial proceedings, and are only made to appear from an affidavit attached to defendant's motion for a new trial. It is well settled that the only proper method of showing such matters is to make them a part of the report of proceedings (formerly the bill of exceptions) and that *ex parte* affidavits cannot be used for this purpose. (*People v. Capello,* 282 Ill. 542; *Peyton v. Village of Morgan Park,* 172 Ill. 102.)

Moreover it appears that defendant took no action whatever to make and preserve its objections to the remarks of the trial judge until the filing of its motion for a new trial. Our courts have consistently held that error cannot be predicated upon the conduct of a trial judge to which no objection was made at the time. (*Burke v. Molloy,* 294 Ill. App. 442.)

Defendant next complains of certain instructions given by the court on behalf of plaintiff. Plaintiff's instruction No. 1 to which objection has been taken by defendant, told the jury in effect that if the defendant was found to be negligent and that such negligence was the proximate cause of plaintiff's injury, then plaintiff was not to be regarded as having assumed the risk of such negligence unless the jury found that he was aware of such negligence and fully appreciated the risk or danger therefrom, or that such negligence and the risk and danger therefrom were so open and plainly observable and obvious, that plaintiff must be presumed to have had knowledge thereof.

Defendant's argument is that under the evidence there could be no dispute that plaintiff was aware of the risk because the dwarf signal had been in the same place for 24 years, and that plaintiff knew of its loca-

tion and therefore the instruction was erroneous because it submitted this question of knowledge to the jury. As we have already pointed out, the mere location of the signal was not enough so that we can say, as a matter of law, that the plaintiff was fully aware of the danger incident to riding past the signal on an unusually wide box car, of the type that he was riding at the time of the accident. The signal may have been safe for every other trip but this one, and we cannot say that all reasonable men would agree that plaintiff should have appreciated the danger on this one occasion before he was injured. We see no error in the instruction as given.

Instruction No. 2 is a lengthy instruction in which plaintiff has attempted to incorporate all of the material facts in evidence, and to apply the applicable rules of law thereto. Defendant has not set forth the full instruction in its brief, but has contented itself with the general argument that the instruction did not incorporate all of the elements involved in the case. We have carefully examined the instruction and believe that it included all of the material facts upon which plaintiff based his right to recover, and that it clearly sets forth the principles of law applicable to such facts.

Defendant objects to plaintiff's instruction No. 3, because the jury are permitted in considering the question of the plaintiff's damages, to take into consideration any present or future pain and suffering of body and mind that plaintiff may have suffered on account of his injuries. Defendant contends that mental suffering has never been an element to be considered by a jury in awarding damages. We do not so understand the law. Mental pain that is the direct and necessary result of physical pain is a proper element of damages in a case of this nature. (*Chicago City Ry. Co. v. Anderson*, 182 Ill. 298; *Chicago Consol. Traction Co. v. Schritter*, 222 Ill. 364.)

This case has been ably presented by counsel for each side.  However, in the brief of plaintiff appellee appears a statement, or rather a misstatement, which we feel we cannot pass by without comment.  In such brief it is stated that the United States Supreme Court in *Chicago R. I. & P. Ry. Co. v. Ward,* 252 U. S. 18, said: ''He does not, however, assume such risks as are created by the master's negligence, nor such as are latent, or are only discoverable at the time of the injury.  The doctrine of an assumption of risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment.  Where he knew, or . . . should know, the risk to which he is exposed, he will, as a rule, be held to have assumed them; but where he either does not know, or, knowing, does not appreciate such risk, and his ignorance or non-appreciation is not due to negligence or want of care on his part, there is no assumption of risk on the part of the servant, preventing a recovery for injuries.''  Even a mere cursory examination of such opinion discloses that the language quoted was not an expression of such Supreme Court but was merely a quotation of the words used by the trial court in charging the jury, and that, instead of approving or using such language the Supreme Court said: ''. . . this charge as to the assumption of risk was not accurate, in stating without qualification that the servant did not assume the risk created by the master's negligence.''

There being no reversible error, the judgment of the trial court is affirmed.

*Affirmed.*