Maxine M. Plank, Executrix of the Estate of Laurence M. Plank, Deceased, Plaintiff-Appellee, v. Thomas Earl Holman, Defendant-Appellant, and Myrtle R. Walgreen and Elsie Rayfield, Administratrix of the Estate of Ralph R. Rayfield, Deceased, Defendants-Cross Appellants.

Gen. No. 68–105.

Second District.

April 11, 1969.

Gates W. Clancy, of Geneva, for appellant.

O'Brien, Burnell, Puckett & Barnett, Tyler and Peskind, and George R. Matyas, of Aurora, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is a wrongful death action brought by Maxine M. Plank, Executrix of the Estate of Laurence M. Plank,

against Thomas Earl Holman, Myrtle R. Walgreen and Elsie Rayfield, Administratrix of the Estate of Ralph R. Rayfield. The jury returned a verdict for the plaintiff, on which judgment was entered, and the defendants appealed.

At the time of the accident, Laurence M. Plank was driving a 1963 Buick in a westerly direction along U. S. Route No. 30 at a point about one mile west of its intersection with Illinois Route No. 47. The highway, at this place, had two lanes. At the site of the accident, there was a yellow, no-passing stripe for the westbound traffic, and the highway, from east to west, was on a slight upward grade, toward the crest of a hill. The plaintiff, Maxine M. Plank, was driving another car, and was following approximately eight to nine-car lengths behind her husband's car. There were no cars between them.

The defendant, Holman, was driving a 1964 Mustang in an easterly direction along the highway. A passenger was with him, who later and prior to the time of the trial, became his wife. A 1964 Lincoln, also traveling in an easterly direction, was following the Mustang. This car was driven by the decedent, Ralph R. Rayfield, the chauffeur for the defendant, Myrtle R. Walgreen. Elsie Rayfield, Administratrix of her husband's estate, was riding in the back seat of the Lincoln.

The defendants, Holman, Walgreen and Rayfield, and also Mrs. Holman, were offered as witnesses. The plaintiff objected by virtue of the provisions of the Dead Man's Act (Ill Rev Stats 1967, c 51, par 2), and they were not permitted to testify.

The plaintiff called the deputy sheriff who investigated the accident, as a witness. He testified concerning the location of the vehicles, and of the various occupants of the cars along the roadway, upon his arrival at the scene of the accident. He stated that when he arrived at the scene, debris, consisting mainly of dirt, glass, and oil or some other liquid, was on the highway in the westbound

lane of traffic; that the Buick was facing in a westerly direction, completely in the westbound lane with its right rear wheel perhaps on the shoulder of the westbound lane; that the Lincoln was swung around, facing in a northwesterly direction, the front half being in the westbound lane of traffic and the rear half being in the eastbound lane of traffic; and that the Lincoln was ten to fifteen feet east of the Buick. He further testified that the Mustang was some twenty feet east of the Lincoln, partly on the shoulder on the eastbound side of the highway; and that he observed and measured, skid marks.

The plaintiff next called Mr. Willgeroth, who arrived at the scene shortly after the accident. He did not observe any skid marks at that particular time, but his family remarked about them. The next day, he returned to the scene and observed the skid marks: the heaviest and most obvious ones were in the eastbound lanes. He testified that they seemed to swerve into the west lane; and that some lesser skid marks were in the westbound lane.

A witness was then called by the plaintiff, who testified to the careful driving habits of the decedent, Laurence M. Plank.

The plaintiff then called William Billings, a reconstruction expert to testify. Much of the dispute on this appeal relates to his testimony. He testified as to his training, background and experience in the field; that he had reconstructed the accident in question, and in doing so, he employed photographs of the cars involved, photographs of the highway at the scene of the accident, and photographs taken by him at the scene at a subsequent date. He testified as to his personal observation of the Buick and to the measurements and other observations made by him at the scene of the accident at a subsequent date. He testified in detail with reference to the various steps involved in his reconstruction of the accident.

The witness gave his opinion, based upon his reconstruction, of the manner in which the accident took place.

It was his opinion that the eastbound Mustang was over-taking and passing the eastbound Lincoln; that the driver of the Mustang (Holman) observed the closeness of the westbound Buick and turned to the right and braked to get back into the eastbound lane in front of the Lincoln; that, at that point, the driver of the Lincoln, in order to avoid a rear-end collision, turned to the left and applied his brakes, at which point the front of the Lincoln and the rear of the Mustang collided; and that the Lincoln then proceeded crossways into the westbound lane, where it was struck at its right front fender by the front of the Buick.

The defendants called Mrs. Arnold, who was traveling west along the same highway, as their first witness. She testified that she first heard a crash and then saw the Lincoln, in the air, going from the eastbound into the westbound lane. She was not able to describe anything that happened prior to the sound of the crash. Next, they called Mrs. Houston. She testified that she was riding in a car proceeding westerly along the same route; that she looked up and saw the two cars that had collided, and that when she saw them they were up in the air "like a peak."

The defendants also called Maxine M. Plank, under section 60 of the Civil Practice Act. She testified that she was driving about eight- to nine-car lengths behind her husband's car; that there were no cars between them; and that she saw her husband's car and the Lincoln come together. She also stated that she did not see either the Lincoln or the Buick contact the Mustang; that she did not see any brake lights on her husband's car prior to the collision, and that, "Actually I only saw two cars come together at the scene of the accident—the Buick and the Lincoln." She stated that she did not see the Lincoln at any time prior to the actual impact.

The defendants made offers of proof as to the nature of the testimony of those who were barred from testifying under the Dead Man's Act.

The defendants contend:

(1) that the trial court erred in permitted evidence of decedent Plank's careful habits, as there were competent eyewitnesses to the accident;

(2) that the trial court erred in admitting the testimony of the reconstruction expert and in failing to strike his testimony on the grounds that there were eyewitnesses to the accident, thus barring reconstruction testimony, and on the further ground that there was inadequate foundation for such testimony;

(3) that the trial court erred in permitting the case to go to the jury in that the circumstantial evidence as to the proximate cause of the accident was not sufficient to present a jury question;

(4) that the trial court erred in excluding the occurrence testimony of the defendants' witnesses;

(5) that the trial court erred in refusing tendered instructions on impeachment and sudden emergency; and

(6) that the verdict was contrary to the manifest weight of the evidence.

██ We believe that the trial court was correct in admitting evidence of the careful habits of the decedent, as a circumstance tending to prove that he was exercising due care and was free from contributory negligence at the time of the accident. Before there can be eyewitnesses whose testimony is sufficient to bar the admission of evidence of habits of due care, the purported eyewitnesses must see the incident in question more than the brief instant of, or immediately prior to, impact. Whether or not the decedent, Plank, was in the exercise

of due care for his own safety would depend, in part, on the locations of the various cars prior to impact, and their actions and paths as they approached the point of impact. Absent direct and positive testimony as to what transpired shortly before the accident, the plaintiff must then seek to establish due care through proof of careful habits and circumstantial evidence surrounding the incident. Lobravico v. Checker Taxi Co., Inc., 84 Ill App2d 20, 31, 228 NE2d 196 (1967); Davenport, R. I. & N. W. Ry. Co. v. DeYaeger, 112 Ill App 537, 543 (1903); Cleary, Handbook of Illinois Evidence, Second edition, § 12.14.

■ None of the purported competent eyewitnesses saw the incident sufficiently to bar the evidence of careful habits. Even Maxine M. Plank, who was in the most obvious position to have seen what happened, did not see or notice the paths of travel of the cars prior to the impact. She did not see the Lincoln prior to the impact. The remaining witnesses also saw the incident only at the moment of, or the moment after, the impact. Their observations of the event were momentary, fragmentary and insufficient to describe what actually happened, and the trial court did not err in admitting the evidence of the careful driving habits of the decedent, Plank.

Maxine M. Plank testified that her husband had been industrious, his habits of sobriety and thrift were good, his health had been good, and he had contributed money, goods and services to her. The defendants, Walgreen and Rayfield, contend that such testimony was tantamount to evidence of habits of care and, thus, opened the door to rebuttal evidence and removed the bar of the Dead Man's Act (Ill Rev Stats 1967, c 51, par 2), and cited Illinois Cent. R. Co. v. Nowicki, 148 Ill 29, 34, 35 NE 358 (1893); Randolph v. New York Cent. R. Co., 334 Ill App 268, 275, 79 NE2d 301 (1948), and other cases.

■ The plaintiff contends that this issue has been waived by the failure of any of the defendants to raise this point in their post-trial motions. Despite the argu-

223

ments of the defendants' counsel to the contrary, we do not agree that this error, urged on appeal, was presented in the post-trial motion. Counsel for the defendants argue that the allegations in the post-trial motion, that there were eyewitnesses "who were competent and available, but were erroneously barred from testifying," preserves the point. However, this particular allegation in the post-trial motion was advanced as a ground for their contention that it was error to permit the expert witness to testify. It was not asserted in the post-trial motion that the evidence of health, sobriety, support and thrift of the decedent, Plank, removed the bar of the Dead Man's Act and, thus, permitted the testimony of the interested occurrence witnesses on this issue. We conclude that the issue has not been preserved. Ill Rev Stats 1967, c 110, par 68.1; Rogers v. Gehrke, 77 Ill App2d 343, 346, 347, 222 NE2d 351 (1966).

With regard to the reconstruction testimony of the witness, Billings, the court in Miller v. Pillsbury Co., 33 Ill2d 514, 211 NE2d 733 (1965), has set forth the guidelines to be followed by the courts in this State in the admission of such testimony. Miller involved a wrongful death action, and there were no eyewitnesses qualified to testify. The principal factual question for determination was: Which vehicle went over the center line of the highway at the time of the collision? The testimony on this issue was almost exclusively that of an accident reconstruction expert.

With reference to such testimony, the court, on pages 516 and 517 said:

"While there has been a reluctance to permit expert testimony on many matters on the basis that it invades the province of the jury, confuses the issues and usurps the function of the jury, the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of

224

common knowledge and understanding where diffi-
cult of comprehension and explanation. The jury
still may accept or reject such testimony. Thus, in
the field of reconstruction of motor vehicles acci-
dents, where there is physical evidence present suf-
ficient to provide the basic data needed, an expert
may analyze and reconstruct the occurrence.

"...

"While there is a conflict in authority among
American courts on this matter, we are of the opinion
that expert testimony on reconstruction of an auto-
mobile accident should be admissible where it is nec-
essary to rely on knowledge and application of prin-
ciples of physics, engineering and other sciences
beyond the ken of the average juror. Such evidence
does not usurp the province of the jury, since the
jury does not have to accept the witness's opinion.
Further, such evidence is essential to aid the jury in
drawing the proper inferences from the raw physi-
cal facts."

█ Here, as in Miller, the defendants' objections to
the reconstruction testimony, in part, is founded upon the
argument that there was not sufficient physical evidence
to permit the reconstruction. In both cases the witnesses
relied heavily upon photographs. In the instant case, the
photographs upon which the witness relied had been
admitted into evidence. There was adequate testimony
to confirm that the damage, to the vehicles exhibited by
the photographs, was that occasioned by the accident.
There was adequate proof that the skid marks displayed
in the photographs, likewise, were those resulting from
the accident. The photographs were proper subjects to be
used by the witness as a partial basis for this reconstruc-
tion. Miller v. Pillsbury, supra, 517.

█ The witness further detailed his personal obser-
vations of the Buick and the scene of the accident, the
photographs taken by him, the use of these in measuring

225

and confirming skid marks, the procedures and methods used in arriving at his conclusions, and the matters upon which he relied for his conclusions. We believe that the witness testified concerning sufficient factual data to constitute an adequate foundation for his opinion. The trial court did not err in exercising its discretion by admitting this testimony. Werner v. Illinois Cent. R. Co., 309 Ill App 292, 304, 33 NE2d 121 (1941).

Our earlier comments, with regard to the absence of competent eyewitnesses who saw the entire incident sufficiently to describe it in any detail, are applicable as well to the defendants' contention that the reconstruction evidence should not have been admitted because of the presence of eyewitnesses. There were no qualified eyewitnesses who could testify relative to paths of travel of the three cars in question prior to the impact. It has been held proper to admit expert opinion testimony on behalf of the plaintiff, when he was an occurrence witness, but could not testify relative to what, in fact, had occurred. Mack v. Davis, 76 Ill App2d 88, 93, 94, 221 NE2d 121 (1966).

The combination of the Dead Man's Act, and its prohibitions, with the admission of expert reconstruction testimony on behalf of one asserting the benefits of the Act, tends to produce a somewhat unfair circumstance with reference to informing the jury of what actually happened. We are not unaware of the pitfalls and dangers inherent in permitting such expert testimony, particularly when rebuttal, other than by additional expert testimony, is barred. In a situation such as the case at bar, the Dead Man's Act is first employed to bar the testimony of eyewitnesses, and the absence of competent eyewitnesses is then advanced as justifying the testimony of an expert with reference to what happened.

It may well be the better practice, in a situation such as this, to permit the testimony of interested eyewitnesses if the party barring such testimony presents an expert

to give his opinion of what happened. In such a case, the testimony of interested eyewitnesses could then be admitted, not as a basis to strike the testimony of the expert, but as evidence for the jury to weigh along with that of the expert. In a case such as the one at bar, the jury could then determine whether it thought the testimony of all four interested persons—which would have indicated that the Mustang at no time passed the Lincoln, and that the Buick was passing and in the eastbound lane—was worthy of more credence than that of the expert. Our concern over the result under the present state of the law is that an expert, who did not witness the incident and, yet, who is apt to be placed in high esteem by the jury because of his credentials, is permitted to testify, without contradiction, with reference to what supposedly happened.

■ However, it is clear, under existing law, that such testimony is favored and may not be a basis to remove the bar of the Dead Man's Act. Miller v. Pillsbury, supra.

The defendants contend that the plaintiff's evidence consisted of circumstantial evidence from which facts establishing the absence of negligence of the defendants or the absence of due care of the decedent, Plank, could be inferred with equal certainty. From this they argue that the existence of a fact may not be inferred from evidence when the existence of another inconsistent fact can equally be inferred from the same evidence; and that in such case, the jury may not be permitted to speculate as to which of the facts should be inferred. They cite: Tiffin v. Great Atlantic & Pacific Tea Co., 18 Ill2d 48, 60, 61, 162 NE2d 406 (1959); Commerce Union Bank v. Midland Nat. Ins. Co., 53 Ill App2d 229, 239, 240, 202 NE2d 688 (1964); McKinney v. Illinois Power Co., 26 Ill App2d 193, 203, 204, 167 NE2d 249 (1960), which cases so hold.

However, in view of the testimony of the deputy sheriff relative to the skid marks; that of the witness,

Willgeroth, as to the comments of his family concerning skid marks and his examination of them the following day; the testimony of Billings that the type of marks indicated an impact; and the testimony of the employee of the sheriff, that there was no other report of an accident at this location in the sheriff's records for the month immediately preceding or following the date of the accident, we do not agree that it is equally as reasonable to assume that the skid marks were made by vehicles other than those involved in the accident.

The witness, Billings, testified concerning the travel paths of the various cars and gave a most detailed and adequate justification for his conclusion. If the jury were to accept his calculations and explanations, as it apparently did, there could be no verdict other than for the plaintiff. We recognize that the plaintiff's theory of the case cannot be established by circumstantial evidence unless the facts relied on are of such nature and are so related to each other that it is the only conclusion that can be drawn from them. But proof of such facts may be made by circumstantial as well as by direct evidence. A greater or less probability leading, on the whole, to a satisfactory conclusion is all that can reasonably be required to establish controverted facts. Ohio Bldg. Safety Vault Co. v. Industrial Board, 277 Ill 96, 102, 103, 115 NE 149 (1917). The court properly submitted the case to the jury.

The trial court did not give an instruction tendered by the defendant, Holman, with regard to impeachment by prior inconsistent statements. The tendered instruction was intended to relate to the testimony of Billings. The defendant contended that Billings made prior statements inconsistent with his trial testimony, both as to not using the police report as a basis for his reconstruction and as to the skid marks being such that they could not have been made without the occurrence of a collision. A review of the testimony convinces us that he did not previously

228

testify or indicate that he used the police report in making his reconstruction. Likewise, his testimony at the trial was that the nature of the skid marks of the Lincoln were such that they could not have been made without a collision. In his deposition he testified that the nature of the Mustang's skid marks were such that they could have been made without a collision. There is nothing in this testimony which would warrant giving the instruction on impeachment.

■ The refusal of the trial court to give the tendered instruction relating to sudden emergency was not error. It is recommended in the Illinois Pattern Jury Instructions that such an instruction not be given. IPI No. 12.02. We are not persuaded that the committee recommendations were wrong or that it was error to refuse to give such an instruction in the case at bar.

We have reviewed all of the testimony in this case. It might be that if we were the trier of fact, we would have reached a different conclusion, but that is neither our duty nor privilege. The trial judge, who saw and heard the witnesses, upheld the verdict of the jury. We cannot say that he was wrong or that the jury's verdict was palpably erroneous and wholly unwarranted.

■ Likewise, we cannot say that the verdict or the judgment entered thereon was contrary to the manifest weight of the evidence. Payne v. Kingsley, 59 Ill App2d 245, 252, 207 NE2d 177 (1965). In our opinion, the evidence is neither so totally inadequate as to require that a judgment be entered notwithstanding the verdict nor so frail as to exact a finding that the verdict is against the manifest weight of the evidence, or that the evidence will not support the verdict. We find no error in the trial proceedings, and the judgment, accordingly, is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.