JOAN R. MURPHY, Adm'r of the Estate of Robert T. Murphy, Deceased, Plaintiff-Counterdefendant-Appellee, v. JAMES B. HOOK, Defendant-Counterplaintiff-Appellant.

(No. 73-17;

Second District—August 28, 1974.

John B. Graves, Jr., of Elkhorn, Wisconsin, and Korf, Pfiel & Graves, of Rockford, for appellant.

John A. Leemon, of Mt. Carroll, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Upon completion of the trial in this wrongful-death case, the jury returned a verdict in favor of plaintiff, Joan R. Murphy, and against defendant, James B. Hook, in the amount of $70,000. Plaintiff sued in her capacity as administrator of the estate of her deceased husband, Robert T. Murphy. On August 7, 1972, the Ogle County circuit court judge entered the order, based upon the jury's verdict, from which this appeal has emanated.

Defendant has presented 12 issues for our determination; one of which is whether or not the cumulative effect of error and improper conduct of plaintiff's attorney during the trial deprived defendant of a fair and impartial trial by jury. After analyzing the transcript of the trial proceedings with great circumspection we find ourselves in agreement with defendant on this issue. For this reason, our recitation of the facts and disposition of this case will be framed within the perspective of this issue of the cumulative effect of the error.

Perhaps the only matter that was not bitterly disputed in this trial was the fact that plaintiff's husband was killed in the vehicular collision which precipitated the wrongful-death proceeding. The collision occurred in the late afternoon of August 24, 1969, along route 64, which runs east and west, approximately 4 miles west of Mount Morris, Illinois. Robert Murphy was traveling alone along route 64 in a westerly direction and defendant was driving along the same highway in an easterly direction. Defendant's wife was riding in the passenger seat of their pickup truck and three Sunday-school students rode in the camper portion of the pickup. The truck was also pulling a boat trailer and boat.

The collision occurred in the westbound lane of the highway. Photographs of the scene, which were taken shortly after the collision occurred, were introduced into evidence by plaintiff. The photographs illustrated that the front of the Murphy station wagon crashed into the right side of the Hook pickup truck. Both vehicles, as well as the boat and its trailer, were totally destroyed. Mr. and Mrs. Hook received minor injuries in light of the fatality caused to Murphy; and the three students riding in the camper portion of the pickup were not injured. There were no competent eyewitnesses to the collision.

The investigating State trooper, Kenneth Clark, was called by plaintiff and testified that each vehicle laid down skid marks which he measured. In the course of the trooper's direct and cross examinations, he stated that the Murphy station wagon burned 37 feet of parallel skid marks on the pavement. These marks commenced approximately 1 foot to the

inside of the center line of the highway and continued in straight lines northwesterly to a point approximately 2 feet from the north shoulder of the westbound lane. These marks led up to the right front tire of the station wagon. The trooper also stated that the Hook pickup laid approximately 100 feet of skid marks in its eastbound lane. He further stated that these skid marks continued to curve across the highway's center line into the westbound lane.

Since there were no competent eyewitnesses to testify to the facts of the collision, the import of each party's trial theory of the case centered around the testimony pertaining to the vehicles' skid marks; especially those laid down by the Murphy station wagon. Plaintiff contended that the skid marks made by the station wagon were caused by its *left* front and rear tires. This theory would tend to indicate that the station wagon was in its own lane at the time the brakes were applied. Defendant, however, defended on the theory that the skid marks burned by the station wagon were caused by its *right* front and rear tires, thereby attempting to infer that the station wagon was in the wrong lane of traffic just prior to the collision.

To establish defendant's negligence and to show her deceased husband's freedom from contributory negligence, plaintiff called, among others, two witnesses in her case-in-chief. Eldon Clemons testified that he had been driving along route 64 in a westerly direction for a distance of approximately 20 miles prior to arriving at the scene of the collision. He stated that he had been traveling at or below the posted speed limit and that he did not observe Murphy's station wagon at any time during his trip along Route 64 prior to arriving at the scene. He further stated that he would have recognized the station wagon if it had passed his car because the station wagon bore Iowa license plates from the same city in which he resided. There was testimony from another witness to the effect that Murphy did intend to travel along Route 64 on his way back home to Iowa.

■■ The purpose of Clemons' testimony, as stated by plaintiff's attorney in chambers, was to circumstantially show that Murphy had not been speeding just prior to the accident. Defendant objected to this line of testimony on the ground that it was merely tantamount to an "inference upon an inference" and it would invite the jury to speculate as to what speed Murphy was actually traveling at. Defendant now presents this same contention on appeal and we are in agreement that Clemons' testimony was plainly irrelevant to the issue of Murphy's contributory negligence. The inference that Murphy could only have been speeding if his station wagon had passed Clemons' vehicle is one that does not logically follow from any of the evidence.

Although the trial judge must be given discretion as to the relevance of evidence offered to prove a case-in-chief, the error of allowing the jury to consider Clemons' testimony, together with the other errors committed during this trial, indicate that the jury's conclusions in this case were not founded upon competent and sufficient evidence. (See *Foss Park District v. First National Bank* (1970), 125 Ill.App.2d 276, 260 N.E.2d 474.) The jury should not have been allowed to consider Clemons' testimony. The speculation that his testimony must have caused the jury to engage in at the outset of this trial was an initial factor which led the jury's complete confusion by the time the trial was concluded. As the trial judge stated to counsel in chambers near the end of the trial: "You are losing the whole jury out there, both of you. They don't know whether they're foot or horseback. They really don't."

The errors and confusion progressed as plaintiff called Rudy Berris, a traffic engineer, to testify as an expert in automobile accident reconstruction. His testimony as an expert was not premised on his personal knowledge of the facts of the accident or view of the scene. Rather, his testimony was based upon his examination of the numerous photographs of the scene that had been admitted into evidence. The essence of Berris' testimony was that the skid marks laid down by the Murphy station wagon were caused by its left front and rear tires; thereby implying that the vehicle was to the right of the highway's center line just prior to the collision. Eliciting this testimony from Berris proved to be no easy task for plaintiff's attorney. Defendant made numerous valid objections as to improper foundation and form for the questions presented to Berris. At the close of plaintiff's case-in-chief, defendant also moved to strike Berris' testimony on the grounds that he was asked to state conclusions based upon viewing the photographs and that he was not asked proper opinion questions.

■■ Defendant contends that it was improper for Berris to testify from his examination of the photographs as opposed to being posed with a hypothetical question. Proper trial technique would have warranted the use of hypothetical questions to elicit Berris' testimony since he did not have personal knowledge of the facts about which he was testifying. (31 Am. Jur. 2d *Expert and Opinion Evidence* § 53, at 559 (1967).) Nevertheless, we do not believe that the trial judge abused his discretion by allowing Berris to testify as an expert from his examination of the photographs. *Woyak v. Konieske* (1952), 237 Minn. 213, 54 N.W.2d 649; see *Plank v. Holman* (1969), 108 Ill.App.2d 216, 246 N.E.2d 694, *rev'd on other grounds* (1970), 46 Ill.2d 465, 264 N.E.2d 12.

However, we believe that the absence of any proper factual founda-

tion for the questions presented to Berris, together with their improper form, and the repeated objections which those questions caused defense counsel to make, severely prejudiced defendant. Due to the fact that Berris was not presented with hypothetical questions, it became necessary for him to assume, on his own, certain facts in order to answer most of the questions presented to him. In several instances, the facts assumed by Berris were not even in the record. This fatal error required the trial judge to finally interrupt plaintiff's attorney and order him to "put some assumptions in the record." Notwithstanding this admonition, the questions and answers comprising the remainder of Berris' testimony soon resumed their improper nature. It is readily apparent that this practice was improper because the opinion of an expert must be based upon the evidentiary facts in the record. *Pritchett v. Steinker Trucking Co.* (1969), 108 Ill.App.2d 371, 247 N.E.2d 923.

■■ In a case such as this one where the evidence is closely balanced on the essential issue of negligence, we believe that the above-discussed deficiencies in Berris' direct examination and testimony were such that the jury should not have been allowed to consider his testimony. See *Pritchett v. Steinker Trucking Co.* (1969), 108 Ill.App.2d 371, 247 N.E. 2d 923.

Similarly, the plaintiff called Irwin Ginsberg to testify in rebuttal as an expert automobile accident reconstruction witness. He stated that he was an engineering physicist; however, he had never done any work on automobile collision cases. Hearing this, defense counsel requested that he be able to examine Ginsberg to determine his competency as an expert in automobile accident reconstruction. Pursuant to this examination, Ginsberg stated that he had no expertise in the area of tires, tire tracks, car handling or driver behavior. Yet, his "expert testimony" on direct examination concerned each of these areas in which he candidly stated that he had no expertise.

■■ It is an established principle of trial practice that one may testify as an expert on questions coming within the field of his training and experience where such training and experience give the witness special knowledge not shared by persons in the ordinary walks of life. (*People v. Jennings* (1911), 252 Ill. 534, 96 N.E. 1077; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill.App.3d 719, 295 N.E.2d 329; 31 Am. Jur. 2d *Expert and Opinion Evidence* § 27, at 525 (1967).) Similarly, the test of competency for an expert is whether or not he exhibits sufficient knowledge of the subject matter to entitle his opinion to go to the jury. (*Taylor v. Carborundum Co.* (1969), 107 Ill.App.2d 12, 246 N.E.2d 898.) And although the trial judge has broad discretion in determining if a wit-

ness has been qualified as an expert (*Northern Illinois Gas Co. v. Wienrank* (1966), 66 Ill.App.2d 60, 213 N.E.2d 411), our analysis of the transcript causes us to find that this discretion was abused with respect to Ginsberg. Since he testified as a purported expert in areas in which he admittedly had no training or experience, his testimony should not have been considered by the jury and it was prejudicial for them to so consider it.

■■ In attempting to establish pecuniary damages, plaintiff's attorney called his client to testify. Previously, pursuant to defendant's pretrial motion in limine, the trial judge ruled that plaintiff's five children should remain out of the court room. During direct examination of plaintiff, however, the children were present and plaintiff's counsel turned to them and asked them to rise. He then asked plaintiff to state their names and asked the children to stand at the trial bar. In the midst of this clear and improper tactic, Mrs. Murphy and the children broke into tears and a short recess was then called. During this recess, in chambers, plaintiff's attorney stated to defense counsel, "You asked for it, Counsel." It is readily apparent that this tactic constituted a deliberate attempt by plaintiff's attorney to appeal to the sympathies of the jury. Although plaintiff's attorney apparently did receive permission from the trial judge to have the children in the court room for the limited purpose of allowing plaintiff to identify them, we believe that this conduct was highly improper and prejudicial to the defendant.

Defendant also contends in this appeal that it was prejudicial error to allow Timothy Murphy to testify that his father had received the top salesman award from a past employer, and that certain improper argument by plaintiff's counsel in his closing statement was also prejudicial. However, as we recently stated in *Geisberger v. Quincy* (1972), 3 Ill.App.3d 437, 278 N.E.2d 404, 407: "We need not rule upon or further dissect each version of this litany, as the cumulative effect of error and improper conduct of counsel may amount to prejudicial error requiring reversal." Thus, we find that defendant was prejudiced and is entitled to a new trial since it cannot be determined whether the jury would have rendered a different verdict if the errors discussed had not intervened.

■■ Since our holding necessitates remanding this cause for a new trial, we deem it appropriate to dispose of only three of the other issues presented by defendant. During trial, defendant was prevented from introducing a copy of the driving record of the deceased, Robert Murphy. Defendant contends that the driving record was both material and relevant to show absence of careful habits on the part of Murphy. The record, however, is devoid of any indication that plaintiff attempted to

introduce evidence of her husband's habits. Thus, the driving record was not material to any issue during trial and it was properly excluded.

Since defendant's wife was deemed incompetent to testify pursuant to the Illinois Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, par. 2), defendant desired to introduce testimony from the investigating State trooper, Clark, pertaining to "spontaneous declarations" made by Mrs. Hook at the time the trooper arrived at the scene. For this reason, the attorneys and trial judge conferred in chambers. These declarations indicate that Mrs. Hook saw the Murphy station in the wrong lane of the highway (*i.e.*, eastbound) just prior to the collision. After being presented with all of the material facts pertaining to these declarations, the trial judge refused their disclosure to the jury, through the testimony of the trooper, on the ground that they were "not part of the *res gestae* of the accident." Defendant thereupon made an appropriate offer of proof by eliciting testimony from the trooper in chambers.

In *Peterson v. Cochran & McCluer Co.* (1941), 308 Ill.App. 348, 356-57, 31 N.E.2d 825, the court stated:

> "Whether the circumstances under which a declaration was made are such as to make it reasonably probable that it was spontaneous, presents a preliminary question for the determination of the trial court. The question of admissibility is one of administration, each case being properly decided upon its own facts, and in this regard the trial court should be clothed with a reasonable degree of latitude, since the application of the principle depends on the circumstances of the particular case."

■■ We are satisfied that the trial judge, in the exercise of his discretion and with knowledge of all circumstances, did not commit error in excluding the substance of the declarations from the jury. *Turnbull v. Porter* (1964), 55 Ill.App.2d 374, 206 N.E.2d 97.

■■■ Lastly, defendant contends that the judicial interpretations of the Dead Man's Act, which admittedly precluded him and his wife from testifying to the facts of the occurrence, are "unfair, unreasonable and unconstitutional." In *Plank v. Holman* (1969), 108 Ill.App.2d 216, 246 N.E.2d 694, *rev'd* (1970), 46 Ill.2d 465, 264 N.E.2d 12, this court, speaking through Mr. Justice Davis, indicated that the application of the Act can, at times, appear to be unfair. Nevertheless, the Dead Man's Act currently remains part of our statutory law. Therefore, the trial judge properly precluded defendant and his wife from testifying as to the facts of the collision. (*Plank v. Holman*, supra; *Compton v. Frank* (1970), 126 Ill.App.2d 356, 261 N.E.2d 727). Furthermore, we see no basis for declaring the Dead Man's Act unconstitutional. *In re Estate of Segur* (1972), 5 Ill.App.3d 459, 283 N.E.2d 76.

For the reasons stated above the judgment, based upon the jury's verdict, of the circuit court of Ogle County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

T. MORAN, P. J., and SEIDENFELD, J., concur.